Filed 3/28/23  O'Quinn v. Chi Management CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| BRIANNA O'QUINN,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>CHI MANAGEMENT, INC. et al.,<br><br>Defendants and Respondents. | F083461<br><br>(Super. Ct. No. CV-19-000699)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  Sonny S. Sandhu, Judge.

Aegis Law Firm, Kashif Haque and Ali S. Carlsen for Plaintiff and Appellant.

Klinedinst PC, Lindsey N. Casillas, Robert M. Shaughnessy and Raja A. Hafed for Defendants and Respondents.

-ooOoo-

Plaintiff sued defendants, alleging they were her employers, they violated various provisions of the California Fair Employment and Housing Act (FEHA; Gov. Code,

§ 12900 et seq.),[1] and they wrongfully terminated her employment in violation of public policy. She alleged she was demoted for complaining of sexual harassment, and her employment was terminated after she disclosed she was pregnant and needed time off due to a threatened miscarriage. Defendant, CHI Management, Inc. (CHIMI), moved for summary judgment or summary adjudication of each cause of action alleged. Defendant, Community Hospice, Inc. (Hospice), separately moved for summary judgment on the ground it was not plaintiff's employer; alternatively, it joined in CHIMI's motion.

The trial court granted CHIMI's motion for summary judgment; it granted summary judgment in favor of Hospice on the basis of its joinder in that motion. It declined to rule on Hospice's separate motion.

We conclude summary judgment on CHIMI's motion must be reversed, because triable issues of material fact remain as to four of plaintiff's causes of action. Further, Hospice's separate motion did not establish it is entitled to judgment as a matter of law. We therefore reverse the summary judgment and the order granting defendants' joint motion, with instructions to enter a new order granting summary adjudication only of plaintiff's third, fourth, and fifth causes of action.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed a complaint against CHIMI and Hospice alleging causes of action arising out of her employment with defendants and the termination of that employment. She alleged causes of action for (1) discrimination based on sex and pregnancy; (2) discrimination based on disability; (3) failure to reasonably accommodate her disability; (4) failure to engage in the interactive process in order to accommodate her disability; (5) retaliation; (6) failure to prevent discrimination and retaliation; and (7) wrongful termination in violation of public policy. CHIMI filed a motion for summary judgment,

---

[1] All further statutory references are to the Government Code, unless otherwise indicated.

2.

challenging plaintiff's ability to establish each cause of action. Hospice filed its own motion for summary judgment, asserting it could not be held liable on the causes of action alleged because it was not plaintiff's employer. Additionally, Hospice joined in CHIMI's motion.

The moving papers presented the following facts. Hospice is a nonprofit organization that provides medical, nursing, emotional, spiritual, and educational support to persons coping with grief or a life-threatening illness. CHIMI is a nonprofit organization that operates a chain of local thrift stores that support Hospice. In late 2013, plaintiff began working at one of the thrift stores as a retail clerk. In July 2014, plaintiff was hired as assistant manager of the Oakdale thrift store. She performed well and her supervisor, Donnette Reel, encouraged her to apply for a store manager position when one became available. In September 2016, plaintiff was promoted to manager of the Manteca store. Her supervisor was John Renner.

While plaintiff was the store manager, the Manteca store was not profitable. It was cluttered, unorganized, and dirty; plaintiff seemed unable to build comradery and lead her team. After being counseled about these problems, plaintiff was given a written performance correction notice in July 2017, which advised her of these problems and included a performance improvement plan. Concerns about plaintiff's performance continued, and she was given a final written performance correction notice on October 12, 2017. The problems remained and, on December 14, 2017, plaintiff was demoted to senior retail clerk at the Oakdale store. Subsequently, Reel, the Oakdale store manager, took on the day-to-day management of the Manteca store, while the Oakdale assistant manager, Jennifer Rauch, engaged in the day-to-day management of the Oakdale store where plaintiff was working.

Plaintiff was scheduled to begin working at the Oakdale store as a senior retail clerk on Monday, December 18, 2017. Each day that week, plaintiff punched in late, left

3.

early, took an extended lunch, or did not work at all. She then had two weeks off for a scheduled vacation. She was to return to work on Sunday, January 7, 2018.

On January 6, 2018, plaintiff texted Reel, informing Reel that she (plaintiff) was pregnant. On January 8, 2018, plaintiff told Rauch, that she was pregnant; plaintiff asked that she not be required to lift heavy items. Rauch complied with this request.

On January 7 and 8, 2018, plaintiff arrived late for her shift; she was not scheduled to work January 9 and 10. On January 11 and 12, she was scheduled to work, but did not. On January 13, 2018, Reel gave plaintiff a written performance correction notice describing her absences and tardiness; it established a goal that plaintiff "have no further instances of absenteeism, tardiness and she is to work her entire scheduled shift over the next 6 months." The notice also stated: "Any further tardiness beyond 15 minutes, or failure to work her entire scheduled shift over the next 6 months will result in termination of employment, unless the time off is protected under law." On January 13, 2018, when Reel met with plaintiff and gave her the performance correction notice, Reel asked what was going on or if there was anything she could do to help; plaintiff responded that there was nothing Reel could do to help her.

Plaintiff did not work her scheduled shifts on January 14, 15, 16, 19, or 20, 2018. At that time, defendants' "ATTENDANCE AND ABSENTEEISM" policy provided that employees were expected to be punctual and regular in attendance; if sick or unable to report, they were required to make direct contact with their supervisor, and this notification "should occur at least two hours before the beginning of the workday or earlier, if possible."

On January 14, 2018, plaintiff called in 40 minutes after her shift started to say she would not be at work. On January 15, 2018, plaintiff texted Rauch an hour and a half before her scheduled shift, stating she was at Kaiser with her son and included a photo of an apparently injured toe. Rauch texted back, asking if plaintiff was still going to come

4.

in for her shift, but received no reply. On January 16, 2018, prior to her shift, plaintiff texted Rauch, "I won't be in today … I'll be at the Dr. I'll have a note."

On January 19 and 20, 2018, plaintiff did not work and did not contact anyone at CHIMI to inform them that she would not work her scheduled shifts. On January 20, after plaintiff's shift was over, she texted Rauch, stating: "Sorry I have been so sick it's just horrible. Not sure if it's the flu or just pregnancy. But I can barely get out of bed. I have an appt. To see my Dr. On Wednesday. And will let you know what he says." Plaintiff did not work on Sunday, January 21, 2018. In the evening of that day, plaintiff sent an e-mail to Rauch, stating that, shortly after sending her January 20 text, she rushed herself to the emergency room "for heavy bleeding and clots"; she stated the doctor called it a threatened miscarriage and "ordered me to stay home and take things very easy until I go to my o.b. appt on Wednesday the 24th where hopefully I will find out more. I will keep you posted."

On January 22, 2018, Renner, Jennifer Dunn, CHIMI's director of human resources, and DeSha McLeod, president and chief executive officer of both CHIMI and Hospice, decided to terminate plaintiff's employment; in an e-mail that indicates it was sent at 9:47 that morning, Dunn advised plaintiff she had abandoned her job due to failing to work her shifts and failing to contact anyone to say she would be out. The policy manual provided that "[a]bsenteeism for more than two consecutive days without notification (no call/no show) will be considered a voluntary resignation." Rauch did not have access to her work e-mails except while at work, and did not see plaintiff's January 21 e-mail until around noon on Monday, January 22, 2018. She forwarded it to Renner and Dunn at 12:10 p.m. that day.

The trial court allowed Hospice to join in CHIMI's motion for summary judgment, then granted the motion of both defendants in its entirety. It did not address the merits of Hospice's separate motion. The trial court entered judgment in defendants' favor and plaintiff appeals.

5.

**DISCUSSION**

## I. STANDARD OF REVIEW

Summary judgment is properly granted when no triable issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) "Since summary judgment involves pure matters of law, we review a grant of summary judgment de novo. [Citations.] In undertaking our independent review of the evidence submitted, we apply the same three-step analysis as the trial court. First, we identify the issues framed by the pleadings. Next, we determine whether the moving party has established facts justifying judgment in its favor. Finally, if the moving party has carried its initial burden, we decide whether the opposing party has demonstrated the existence of a triable, material fact issue." (*Chavez v. Carpenter* (2001) 91 Cal.App.4th 1433, 1438.)

We consider all the evidence presented, except that which the trial court properly excluded.[2] (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476-477.) We view the evidence in the light most favorable to plaintiff as the losing party. (*Sandell v. Taylor-Listug, Inc.* (2010) 188 Cal.App.4th 297, 308 (*Sandell*).) We strictly scrutinize the defendant's evidence, liberally construe the plaintiff's evidence, and resolve any evidentiary doubts or ambiguities in the plaintiff's favor. (*Ibid.*)

## II. DISCRIMINATION BASED ON SEX, PREGNANCY, OR DISABILITY

Plaintiff's complaint alleges her employment was terminated shortly after she notified her employer of her pregnancy and took time off due to a threatened miscarriage. She alleges that "her sex, pregnancy, and/or pregnancy-related disability was a motivating factor in Defendant's decision to terminate [her] employment." Further, she

---

[2] Plaintiff objected to some of defendants' evidence; defendants objected to some of plaintiff's evidence. The trial court overruled all evidentiary objections. Neither party has challenged that ruling. Consequently, we consider all the evidence presented in connection with the motion.

would have been entitled to protected leave and reinstatement after her leave, if her employment had not been terminated.

Under FEHA, it is an unlawful employment practice for an employer to discharge or discriminate against a person in compensation, terms, conditions, or privileges of employment because of specified characteristics, including sex or physical disability. (§ 12940, subd. (a).) In this context, "sex" is defined to include "[p]regnancy or medical conditions related to pregnancy." (§ 12926, subd. (r)(1)(A).) Plaintiff's first cause of action alleges discrimination based on sex and pregnancy. Her second cause of action alleges discrimination based on physical disability.

"In employment discrimination cases under FEHA, plaintiffs can prove their cases in either of two ways: by direct or by circumstantial evidence. [Citation.] When a plaintiff proffers circumstantial evidence, California courts apply the three-stage burden-shifting test established by the United States Supreme Court for trying claims of employment discrimination … based on a theory of disparate treatment." (*DeJung v. Superior Court* (2008) 169 Cal.App.4th 533, 549 (*DeJung*).) The burden-shifting test does not apply, however, when the plaintiff presents direct evidence of discrimination. (*Id*. at p. 550.) "It is rare for a plaintiff to be able to produce direct evidence or 'smoking gun' evidence of discrimination," because there is "'seldom … "eyewitness" testimony as to the employer's mental processes.'" (*Heard v. Lockheed Missiles & Space Co*. (1996) 44 Cal.App.4th 1735, 1748.)

"Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption. Comments demonstrating discriminatory animus may be found to be direct evidence if there is evidence of a causal relationship between the comments and the adverse job action at issue." (*DeJung, supra,* 169 Cal.App.4th at p. 550.) "Direct evidence of discriminatory intent in pregnancy discrimination cases generally is in the form of an admission by a supervisor or decision maker that the employee was suspended because she was pregnant." (*Trop v. Sony*

7.

*Pictures Entertainment, Inc*. (2005) 129 Cal.App.4th 1133, 1147.) Direct evidence of disability discrimination may include evidence that the employer took the adverse employment action based on a good faith, but erroneous, belief that the employee was unable to perform the essential functions of the job due to disability. (*Zamora v. Security Industry Specialists, Inc*. (2021) 71 Cal.App.5th 1, 36-37 (*Zamora*).)

In the absence of direct evidence, however,

> "California resolves employment discrimination claims by applying a burden-shifting procedure. Under this test, the plaintiff bears the initial burden of proving a prima facie case of discrimination by presenting evidence showing: (1) he was a member of a protected class, (2) he was qualified for the position sought or was performing competently in the position held, (3) he suffered an adverse employment action, and (4) some other circumstance suggests a discriminatory motive. [Citation.]

> "Once the employee sets forth a prima facie case, the burden shifts to the employer to present evidence of a legitimate, nondiscriminatory reason for the adverse employment action. [Citation.] If the employer does so, the burden then shifts back to the employee to 'offer substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination.' " (*Foroudi v. The Aerospace Corp*. (2020) 57 Cal.App.5th 992, 1007.)

"For a defendant to meet its initial burden when moving for summary judgment, it must demonstrate '"that a cause of action has no merit"' by showing either '"that one or more elements of the cause of action … cannot be established, or that there is a complete defense to that cause of action."' [Citations.] In the context of an employer's motion for summary adjudication of a discrimination claim, this means the employer '"has the initial burden to present admissible evidence showing either that one or more elements of [the] plaintiff's prima facie case is lacking or that the adverse employment action was based upon legitimate, nondiscriminatory factors."'" (*Abed v. Western Dental Services, Inc*. (2018) 23 Cal.App.5th 726, 737-738 (*Abed*).)

8.

If the employer bringing a motion for summary judgment chooses the latter approach, it proceeds directly to the second step of the burden shifting test, and presents evidence of its legitimate, nondiscriminatory reason for taking the challenged employment action. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 357 (*Guz*).) If the employer makes a legally sufficient showing through competent and admissible evidence, then the burden shifts to the plaintiff to present substantial evidence that the employer's stated reason was untrue or pretextual, or to present other evidence of a discriminatory animus, or a combination of the two, from which a reasonable trier of fact could conclude the employer engaged in intentional discrimination. (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997,1004 (*Hersant*).)

The employee cannot "simply show that the employer's decision was wrong, mistaken, or unwise. Rather, the employee '"must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' [citation], and hence infer 'that the employer did not act for the [… asserted] non-discriminatory reasons.'"'" (*Horn v. Cushman & Wakefield Western* (1999) 72 Cal.App.4th 798, 807.) "Proof that the employer's proffered reasons are unworthy of credence may 'considerably assist' a circumstantial case of discrimination, because it suggests the employer had cause to hide its true reasons. [Citation.] Still, there must be evidence supporting a rational inference that *intentional discrimination, on grounds prohibited by the statute, was the true cause* of the employer's actions." (*Guz, supra*, 24 Cal.4th at p. 361.) "[W]e must bear in mind that, '"[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant."'" (*Spitzer v. Good Guys, Inc.* (2000) 80 Cal.App.4th 1376, 1386.)

9.

A.     Discrimination Based on Disability

Under FEHA, it is unlawful for an employer to discriminate against a person in the terms, conditions, or privileges of employment because of physical disability. (§ 12940, subd. (a).) The elements of a plaintiff's prima facie case of disability discrimination are: the plaintiff "(1) suffered from a disability, or was regarded as suffering from a disability; (2) could perform the essential duties of the job with or without reasonable accommodations, and (3) was subjected to an adverse employment action because of the disability or perceived disability." (*Sandell*, *supra*, 188 Cal.App.4th at p. 310.) Pregnancy itself is not a disability. (§ 12926, subd. (m); § 12940, subd. (a); see also, *Gudenkauf v. Stauffer Communications* (Kan. D.C. 1996) 922 F.Supp. 465, 473.) However, "[a] woman is 'disabled by pregnancy' if, in the opinion of her health care provider, she is unable because of pregnancy to perform any one or more of the essential functions of her job or to perform any of these functions without undue risk to herself, to her pregnancy's successful completion, or to other persons. An employee also may be considered to be disabled by pregnancy if, in the opinion of her health care provider, she is suffering from severe morning sickness or needs to take time off for: … bed rest." (Cal. Code Regs., tit. 2, § 11035(f).)

### 1.     Prima facie case

In their motion for summary judgment, defendants argued that plaintiff could not establish a prima facie case of disability discrimination because she could not show the existence of a disability or a causal connection between the claimed disability and her termination. Defendants asserted that, at the time of termination, no health care provider had expressed an opinion that plaintiff was unable to perform any of the essential functions of her job because of her pregnancy. Thus, she could not establish the existence of a disability. Further, "[a]s part of showing that discriminatory animus was a substantial cause of the adverse employment action, an employee must show that the employer had knowledge of the employee's protected characteristic," such as a disability.

10.

(*Soria v. Univision Radio Los Angeles, Inc*. (2016) 5 Cal.App.5th 570, 590-591 (*Soria*).) Defendants contended plaintiff could not establish they knew, at the time they made the decision to terminate plaintiff's employment, that she was disabled due to pregnancy; consequently, plaintiff could not establish any causal connection between the decision to terminate her employment and a claimed disability of which defendants had no knowledge.

FEHA, however, "protects individuals not only from discrimination based on an existing physical disability, but also from discrimination based on a potential disability or the employer's perception that the individual has an existing or potential disability." (*Soria*, *supra*, 5 Cal.App.5th at p. 584; see also, § 12926, subd. (m)(5).) "[A]n employee … may be considered to be disabled by pregnancy if, in the opinion of her health care provider, she is suffering from severe morning sickness." (Cal. Code Regs., tit. 2, § 11035(f).) Although there was no evidence that defendants were aware of any health care provider's opinion that plaintiff was suffering from severe morning sickness prior to the decision to terminate plaintiff's employment, plaintiff presented undisputed evidence that she told Reel and Rauch about her pregnancy on January 6 and January 8, 2018, respectively. Within a few days after, plaintiff was being told she was using the restroom too often, which plaintiff attributed to severe morning sickness. On January 13, 2018, when Reel gave plaintiff her final performance correction notice, plaintiff told Reel she was using the bathroom to throw up. In her January 14, 2018, e-mail to Dunn, plaintiff disclosed that she was "pregnant and having severe nausea/stomach problems," and complained that she was "being told on for being in the bathroom too long." In discussing this e-mail during deposition, Dunn testified she "thought it was possible" plaintiff needed an accommodation. This is evidence that, even if defendants did not have knowledge of an existing disability at that time, they perceived that plaintiff had a pregnancy-related disability or a potential pregnancy-related disability that might require

11.

accommodation. It is sufficient to raise a triable issue of fact regarding whether plaintiff was perceived to be disabled or to have a potential disability.

### 2. *Legitimate, nondiscriminatory reason*

Defendants' motion for summary judgment also addressed the second step in the burden-shifting test. Defendants asserted they had a legitimate, nondiscriminatory reason for terminating plaintiff's employment, and presented evidence in support. They argued plaintiff had excessive absences even before defendant was aware she was pregnant, and she continued to be absent even after receiving a final written performance correction notice on January 13, 2018, which required that she have no further absences during the next six months. Defendants asserted plaintiff failed to comply with their attendance and absenteeism policy and violated the terms of the final written performance correction notice.

At the time of plaintiff's termination, defendants' attendance and absenteeism policy provided, in pertinent part:

> "2. If CHI personnel are sick or unable to report to their assignment, they must make direct contact with their supervisor or contact and/or page their supervisor or Administration person-on-call. Notification should occur at least two hours before the beginning of the workday or earlier, if possible.
>
> "3. Absenteeism for more than two consecutive days without notification (no call/no show) will be considered a voluntary resignation.
>
> "4. Absence of more than three days requires a physician's note. … Even with a physician's note excessive absenteeism may result in disciplinary action, up to and including termination of employment.
>
> "5. Inconsistent attendance and excessive tardiness will lead to disciplinary action, up to and including termination of employment.
>
> "6. In order to determine excessive absenteeism, supervisory personnel will look for the following: [¶] … [¶]
>
> "· Not calling in on the day of absence; and

"• Excessive days which can be generally defined as more than four occurrences (other than those protected under state and federal law) in a six month period…."

Defendants presented evidence that plaintiff's superiors were concerned about her tardiness and absenteeism beginning in December 2017, just after her demotion to senior retail clerk, and continuing into January 2018. In e-mails among Reel, Renner, Dunn, and McLeod beginning on January 11, 2018, and subsequently, they discussed terminating plaintiff's employment because of her attendance issues. Reel expressed her desire to terminate plaintiff's employment, because it was adversely affecting morale among the staff; other employees were working overtime to cover plaintiff's absences and felt plaintiff was being shown favoritism, because the same conduct would not have been tolerated from them. Plaintiff was familiar with CHIMI's attendance and absenteeism policy. She was given a final written performance correction notice on January 13, 2018, which required that she have no further absences for six months, unless the time off was protected by law. Plaintiff did not work any further shifts for which she was scheduled; on two of the days, she did not contact any of defendants' personnel before her shift to notify them she would not be working. Plaintiff did not dispute that she was absent on the dates specified by defendants, or that she failed to notify defendants of her intended absence before her shifts on January 19 and 20, 2018.

"The employer's burden to provide a legitimate nondiscriminatory reason is one of production, not persuasion, and the employer "'"need not persuade the court that it was actually motivated by the proffered reasons … [but only] raise[] a genuine issue of fact as to whether it discriminated against the [plaintiff].""'" (*Abed*, *supra*, 23 Cal.App.5th at pp. 736-737.) Defendants met this burden, by presenting undisputed facts, supported by evidence, showing a legitimate, nondiscriminatory reason that may have motivated them to terminate plaintiff's employment. The burden then shifted to plaintiff to present evidence raising a triable issue of fact regarding whether defendants' proffered reasons

13.

for termination were untrue or pretextual, or to present other evidence of a discriminatory animus.

### 3. Evidence of pretext

Plaintiff did not present any direct evidence of a discriminatory motive. She presented no evidence that any of defendants' personnel stated her employment was terminated because of her pregnancy or a pregnancy-related disability; she presented no evidence defendants' personnel made negative comments about pregnancy, pregnancy-related disability, or pregnant employees in general, or about plaintiffs' pregnancy or any perceived pregnancy-related disability in particular. Plaintiff contends, however, that she presented direct evidence of intentional discrimination, and therefore the burden shifting analysis does not apply and she is only required to produce "'very little'" direct evidence of discriminatory intent to move past summary judgment. (*DeJung*, *supra*, 169 Cal.App.4th at p. 550; *Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 69 (*Morgan*).)

Plaintiff's opening brief states: "The fact that Defendants knew about Plaintiff's pregnancy, knew about Plaintiff's attempts to call off for her shifts on January 20 and 21st, and then orchestrated a situation whereby they could claim that she abandoned her position and terminate Plaintiff's employment is direct evidence of discrimination." Plaintiff's proffered evidence is not direct evidence of discriminatory animus, however. Direct evidence is evidence that proves a fact without inference or presumption. (*DeJung*, *supra*, 169 Cal.App.4th at p. 550.) Reaching a conclusion that defendants intentionally discriminated against plaintiff on the basis of a pregnancy-related disability would require that inferences be drawn from the evidence plaintiff cites. That evidence is circumstantial, rather than direct.

In response to a moving defendant's showing of a legitimate, nondiscriminatory reason for taking an adverse employment action against the plaintiff, the plaintiff must "present evidence that the employer's decision was motivated at least in part by

14.

prohibited discrimination," that is, that discrimination was a substantial motivating factor in the decision. (*Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1158-1159 (*Featherstone*).) The plaintiff must "produce 'substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination.'" (*Hicks v. KNTV Television, Inc.* (2008) 160 Cal.App.4th 994, 1003.) In the absence of direct evidence of discriminatory animus, the plaintiff may do this by demonstrating "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence," [citation], and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons."'" (*Hersant*, *supra*, 57 Cal.App.4th at p. 1005.) "Pretext may also be inferred from the timing of the company's termination decision, by the identity of the person making the decision, and by the terminated employee's job performance before termination." (*Flait v. North American Watch Co.* (1992) 3 Cal.App.4th 467, 479.)

Plaintiff presented evidence that she told three of defendants' personnel – Reel, Rauch, and Dunn – of her pregnancy, and within three weeks, her employment was terminated. It was terminated just eight days after plaintiff told Dunn she was "pregnant and having severe nausea/stomach problems." Although temporal proximity "does not, without more, suffice … to satisfy the secondary burden borne by the employee to show a triable issue of fact on whether the employer's articulated reason was untrue and pretextual" (*Loggins v. Kaiser Permanente International* (2007) 151 Cal.App.4th 1102, 1112), it is a factor to be considered along with other evidence.

Plaintiff presented circumstantial evidence attempting to show defendants' stated reasons for terminating her employment were untrue and therefore unworthy of credence.

15.

She asserted defendants gave different reasons for her termination at different times. Federal cases[3] have suggested that an employer's shifting explanations for its adverse employment action may raise a triable issue of material fact regarding its motives for taking the action. "[F]undamentally different justifications for an employer's action would give rise to a genuine issue of fact with respect to pretext since they suggest the possibility that neither of the official reasons was the true reason." (*Washington v. Garrett* (9th Cir. 1993) 10 F.3d 1421, 1434; accord, *Nidds v. Schindler Elevator Corp.* (9th Cir. 1996) 113 F.3d 912, 918.)

The e-mail Dunn sent to plaintiff on January 22, 2018, effectively terminating her employment, stated plaintiff had been out two days and did not contact defendants before or during those shifts; it stated that, "under the law and company policy," this meant she had abandoned her job. The declarations of Dunn, Renner, and McLeod, filed in support of defendants' motion for summary judgment, uniformly stated that they agreed on January 22, 2018, to terminate plaintiff for "job abandonment consistent with CHI Management's Attendance and Absenteeism policy." Plaintiff also presented evidence that Dunn told the employment development department that plaintiff voluntarily quit due to three absences when she failed to call in or report.

Defendants' separate statement of undisputed material facts, however, asserted defendants made the decision to terminate plaintiff's employment "as a result of Plaintiff's continued failure to comply with CHIMI's Attendance and Absenteeism policy following her final Performance Correction Notice and in light of the issues Mrs. Reel felt Plaintiff's absences were creating for the Oakdale store." The declarations cited by defendants in support of that statement — those of Dunn, Renner, and McLeod, the three persons who made the decision to terminate plaintiff's employment — did not support

---

[3]    "Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes." (*Guz, supra*, 24 Cal.4th at p. 354.)

16.

the statement; they indicated plaintiff's employment was terminated due to job abandonment. Although the declarations discussed plaintiff's absences and tardies, none of the declarants' stated termination was based on excessive absenteeism or tardiness, failure to comply with any particular aspect of the attendance and absenteeism policy, or issues created by plaintiff's absences. In her deposition, Dunn confirmed plaintiff was terminated for not coming in for her shifts or calling to notify her supervisor she would not be working, at least on January 19 and 20, 2018. Dunn added that plaintiff had had issues the prior week as well, when she had called, but had not actually said she would not be in for work; she had said she was at the doctor with her son, but did not say whether she would be in for even part of her shift.

In support of defendants' statement that plaintiff was terminated because of her failure to comply with defendants' attendance and absenteeism policy and the issues her absences caused, defendants also cited e-mails among McLeod, Dunn, Renner, and Reel, which discussed plaintiff's absences and the hardships they caused to the Oakdale store; the e-mails also discussed terminating plaintiff's employment. None indicated her employment was actually terminated for those reasons, however. In fact, in notes written after Dunn received plaintiff's January 14, 2018, e-mail complaining of being criticized or harassed about her bathroom usage, Dunn stated, "it would not be a good idea to terminate her while she has a complaint that needs to be resolved." Dunn also noted on January 16, 2018, "After discussions with John [Renner] and DeSha [McLeod], it was determined to give her another warning regarding attendance instead of termination in light of her complaint."

Thus, the evidence shows that defendants shifted their explanation for plaintiff's termination when they filed their motion for summary judgment. The evidence defendants cited in their separate statement does not support the claim that plaintiff was terminated "as a result of Plaintiff's continued failure to comply with CHIMI's

17.

Attendance and Absenteeism policy … and in light of the issues Mrs. Reel felt Plaintiff's absences were creating for the Oakdale Store."

"A defendant's failure to follow its own policies or procedures may also provide evidence of pretext." (*Moore v. Regents of University of California* (2016) 248 Cal.App.4th 216, 245.) The January 22, 2018, e-mail defendants sent to plaintiff represented that she had abandoned her job under company policy. Dunn, Renner, and McLeod asserted in their declarations that plaintiff abandoned her job "consistent with CHI Management's Attendance and Absenteeism policy." The attendance and absenteeism policy cited by defendants, however, does not mention "job abandonment." The declarants apparently were referring to the provision of the attendance and absenteeism policy that states: "Absenteeism for *more than two consecutive days without notification* (no call/no show) will be considered a voluntary resignation." (Italics added.)

The evidence presented by the parties indicated plaintiff was not absent without notification for "more than" two consecutive days. Plaintiff failed to call before or during her scheduled shifts on January 19 and 20, 2018, to advise defendants that she would not work those shifts. After plaintiff's shift was over on Saturday, January 20, she texted Rauch, advising that plaintiff had been sick, could barely get out of bed, and had an appointment to see her doctor on Wednesday. The text did not expressly state plaintiff would be off sick until her doctor's appointment on Wednesday. When Reel saw the text, however, she interpreted it that way; she advised Dunn, Renner, and McLeod that plaintiff was "going to the doctor on Wednesday so 3 more days out." As interpreted, plaintiff's text served as advance notice that she would not be working the next three days, including January 21, 2018. Consequently, January 21, 2018, did not qualify as another consecutive "no call/no show" day. Plaintiff had two consecutive "no call/no show" days, not "more than" two, as required by the Attendance and Absenteeism policy.

18.

Defendants' failure to follow its own policy may be evidence of an attempt to hide an improper, discriminatory motive for her termination.

There was evidence that, even before defendants gave plaintiff the final performance correction notice on January 13, 2018, Dunn recognized that, "if [plaintiff] mentions in any way that she has a serious health issue that is causing her to miss work; we are obligated to offer her FMLA/CFRA[4] leave or intermittent leave. This would protect her, if she has it certified from a doctor." On January 14, 2018, plaintiff e-mailed Dunn to complain, among other things, that she was "being told that she was in the bathroom too long"; she explained that she was "pregnant and having severe nausea/stomach problems." In her deposition, plaintiff clarified that it was Reel who talked to her about being in the bathroom too long. Dunn testified in deposition that defendants were not aware plaintiff had any kind of a serious health condition "[u]ntil she emailed [Dunn] on the 14th." She also stated that, after receiving plaintiff's January 14, 2018, e-mail, she thought it was possible plaintiff might need an accommodation, but she wanted to talk to plaintiff to find out what was going on in order to make a more informed decision. On January 15, 2018, Dunn went to plaintiff's store at the beginning of her scheduled shift to speak with her, but plaintiff never arrived and did not work that day.

Plaintiff did not work her shifts on January 14, 15, or 16, 2018. Despite the warning in the final Performance Correction Notice that any further absences would result in termination, she was not terminated for those absences.

On January 19, 2018, about 15 minutes after plaintiff was scheduled to begin her shift, Reel e-mailed Dunn, Renner, and McLeod, suggesting they could consider plaintiff's absence to be a no call/no show, because she had not yet contacted anyone

---

**4** FMLA apparently refers to the Family and Medical Leave Act of 1993 (29 U.S.C. §§ 2601-2654). CFRA apparently refers to the California Family Rights Act, also known as the Moore-Brown-Roberti Family Rights Act (§§ 12945.1, 12945.2).

19.

about her absence. In response, Dunn e-mailed: "Please make sure you and [Rauch] do not call her. If she responds it ruins the no call no show." Again, on January 20, 2018, plaintiff failed to come to work or to call and explain her absence; she texted Rauch in the evening, after her shift, to say she had been sick. Rauch informed Reel, who instructed her not to respond to plaintiff's text.

Dunn's handwritten notes reflected receipt of plaintiff's January 14, 2018, e-mail "alleging she is being given a hard time about her restroom usage." Plaintiff's e-mail attributed her increased bathroom use to being pregnant and experiencing severe nausea or stomach problems. Dunn's notes expressed her reluctance to terminate plaintiff's employment while her complaint remained unresolved. In additional notes, dated January 16, 2018, Dunn stated: "After discussions with [Renner] and [McLeod], it was determined to give her another warning regarding attendance instead of termination in light of her complaint."

A reasonable trier of fact could infer from this evidence that defendants were attempting to evade contact with plaintiff in order to avoid being notified that she had a pregnancy-related condition that amounted to a disability and required accommodation. Further, a reasonable trier of fact could infer defendants hastened to conclude that plaintiff voluntarily resigned or abandoned her job, even before she met the "more than two consecutive days" standard for voluntary resignation set out in the attendance and absenteeism policy, in order to avoid dealing with the consequences of her pregnancy or potential pregnancy-related disability, including resolving her complaint about bathroom use. A termination due to absenteeism would require affirmative action on the part of the employer; it would require making an affirmative decision that plaintiff's conduct warranted termination. The existence of the unresolved complaint could call into question defendants' motives for deciding to terminate her employment. A voluntary resignation due to the employee's multiple instances of "no call/no show," however,

20.

would imply a choice by the employee to give up the job, rather than a choice by the employer to terminate the employment.

We conclude that, construed most favorably to plaintiff as the nonmoving party, there was substantial evidence from which a trier of fact could conclude the reasons for the decision to terminate plaintiff's employment were a pretext for discrimination on the basis of pregnancy or a pregnancy-related disability. Summary adjudication of the second cause of action for disability discrimination should not have been granted.

B.     Pregnancy Discrimination

In requesting summary adjudication of plaintiff's first cause of action for discrimination on the basis of pregnancy, defendants proceeded to the second step of the burden shifting analysis and asserted they had legitimate, nondiscriminatory reasons for terminating plaintiff's employment. They argued plaintiff was terminated for absenteeism and tardiness. They maintained plaintiff's only evidence of discriminatory animus was the temporal proximity between the disclosure of her pregnancy and the termination of her employment, which is insufficient to establish pretext.

Sex discrimination under FEHA includes discrimination on the basis of "[p]regnancy or medical conditions related to pregnancy." (§ 12926, subd. (r)(1)(A).) Defendants' motion did not directly address a claim of discrimination on the basis of a medical condition related to pregnancy, although such a claim appears to be encompassed within plaintiff's pregnancy discrimination cause of action. We conclude the same evidence that raised a triable issue of material fact regarding plaintiff's cause of action for discrimination on the basis of a pregnancy-related disability raises a triable issue of material fact regarding her cause of action for discrimination on the basis of sex and pregnancy. Accordingly, summary adjudication of the first cause of action for sex or pregnancy discrimination should not have been granted.

21.

III.    FAILURE TO REASONABLY ACCOMMODATE DISABILITY

Plaintiff's third cause of action alleges defendants violated their duty to make reasonable accommodations for her pregnancy-related disability. Under section 12940, subdivision (m)(1), "FEHA provides an independent cause of action for an employer's failure 'to make reasonable accommodation for the known physical or mental disability of an applicant or employee' unless the accommodation would cause 'undue hardship' to the employer." (*Soria*, *supra*, 5 Cal.App.5th at pp. 597-598.) Generally, "'reasonable accommodation' in the FEHA means … a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired." (*Nadaf-Rahrov v. Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 974.) "A leave of absence also may be a reasonable accommodation if, after the leave, the employee can return to work, with or without further reasonable accommodation." (Cal. Code Regs., Title 2, § 11068(c); *Zamora*, *supra*, 71 Cal.App.5th at pp. 41-42.)

"The elements of a failure to accommodate claim are "'(1) the plaintiff has a disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of the position [held or desired], and (3) the employer failed to reasonably accommodate the plaintiff's disability."'" (*Kaur v. Foster Poultry Farms LLC* (2022) 83 Cal.App.5th 320, 346.) FEHA does not require accommodation of a perceived or potential future disability; it requires reasonable accommodation of an actual, known disability. "Once an employer is aware of a disability, it has an 'affirmative duty' to make reasonable accommodations for the employee. [Citation.] [¶] 'Generally, "'[t]he employee bears the burden of giving the employer notice of the disability. [Citation.] This notice then triggers the employer's burden to take "positive steps" to accommodate the employee's limitations.'"'" (*Soria*, *supra*, 5 Cal.App.5th at p. 598.) The duty to accommodate also may arise, however, when the employer becomes aware of the disability and need for accommodation through a third party, such as a health care provider. (*Zamora, supra*, 71 Cal.App.5th at p. 41.)

Defendants presented evidence that, while plaintiff informed Reel and Rauch that she was pregnant, she did not advise defendants of any related disability or need for accommodation. Plaintiff told Rauch about her pregnancy when Rauch asked her to carry furniture to a customer's car; plaintiff requested that she not be asked to carry anything heavy. Rauch complied with that request. On January 13, 2018, after delivering the final performance correction notice, Reel asked plaintiff what was going on, and if there was anything she could do; plaintiff said there was nothing Reel could do to help. Plaintiff did not provide defendants with a doctor's note about her condition. Plaintiff's January 20, 2018, text to Rauch stated she was sick, but was not sure if it was flu or pregnancy.[5] Her health care providers' documentation from her January 21, 2018, emergency room visit was not given to defendants, and did not instruct her to stay home and not work. It stated: "Plan: Will D/C to home to F/U with OB. Rx for Pelvic rest given, recurrence precautions. Return if worse." The paperwork also stated: "Take it easy if you are not feeling well. Bed rest may help control cramps but you do not have to stay in bed." Plaintiff's January 21, 2018, e-mail to Rauch, which stated, "The e.r. doctor has ordered me to stay home and take things very easy until I go to my o.b. appt on Wednesday the 24th," was not opened by Rauch and read until after the decision to terminate plaintiff's employment had been made.

"A woman is 'disabled by pregnancy' if, in the opinion of her health care provider, she is unable because of pregnancy to perform" her job duties or "in the opinion of her health care provider, she is suffering from severe morning sickness or needs to take time off for … bed rest." (Cal. Code Regs., tit. 2, § 11035(f).) The evidence indicates that, at the time McLeod, Dunn, and Renner decided to terminate plaintiff's employment, they did not have knowledge of any opinion by a health care provider that plaintiff was unable

---

[5] We note that mild conditions, such as influenza and the common cold, which do not limit a major life activity, do not constitute disabilities under FEHA. (Cal. Code Regs., tit. 2, § 11065(d)(9)(B).)

to perform her job functions, suffered from severe morning sickness, or needed to take time off for bed rest.

The evidence does not support an inference that plaintiff notified defendants, prior to the decision to terminate her employment, that she had an actual disability that required accommodation, or that defendants acquired such knowledge from some third party source. Accordingly, the duty to reasonably accommodate plaintiff's claimed disability did not arise while she was employed with defendants. Plaintiff did not present evidence raising a triable issue of fact on this issue. Consequently, summary adjudication of the third cause of action was proper.

## IV.   FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS

Plaintiff's fourth cause of action alleges failure to engage in the interactive process to determine reasonable accommodations for her disability. FEHA makes it an unlawful employment practice for an employer "to fail to engage in a timely, good faith, interactive process with the employee … to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee … with a known physical … disability …." (§ 12940, subd. (n).) The term "interactive process" is defined to mean: "timely, good faith communication between the employer … and the … employee or, when necessary because of the disability or other circumstances, his or her representative to explore whether or not the … employee needs reasonable accommodation for the … employee's disability to perform the essential functions of the job, and, if so, how the person can be reasonably accommodated." (Cal. Code. Regs., tit. 2, § 11065(j).) "'The "interactive process" required by the FEHA is an informal process with the employee or the employee's representative, to attempt to identify a reasonable accommodation that will enable the employee to perform the job effectively.'" (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1013 (*Scotch*).)

The employer's duty to initiate the interactive process is triggered when an employee with a known physical disability requests reasonable accommodations or the employer becomes aware of the need for accommodations through a third party or by observation. (Cal. Code. Regs., tit. 2, § 11069(b).) "The employee must initiate the process unless the disability and resulting limitations are obvious. 'Where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, … the initial burden rests primarily upon the employee … to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations.'" (*Scotch*, *supra*, 173 Cal.App.4th at p. 1013.)

Defendants presented evidence, in the form of plaintiff's deposition testimony, that she did not give defendants any documentation from her health care providers advising that she needed to take time off work or prescribing bed rest, because of a pregnancy disability. The text plaintiff sent to Rauch on the evening of January 20, 2018, stated she had been sick and was not sure if it was flu or pregnancy. It did not indicate that a health care provider believed she was "unable because of pregnancy to perform" her essential job duties or, in the health care provider's opinion, she was "suffering from severe morning sickness or need[ed] to take time off for … bed rest" because of her pregnancy. (Cal. Code Regs., tit. 2, § 11035(f).)

Plaintiff relied on her January 21, 2018, e-mail to Rauch as evidence defendants had notice that a health care provider prescribed bed rest for her. That e-mail was sent to Rauch on Sunday, January 21, 2018. Rauch declared that she did not have access to her work e-mail on Sunday; she did not open the e-mail from plaintiff until around noon on Monday, January 22, 2018, and did not forward it to Renner and Dunn until 12:10 p.m. that day. Dunn e-mailed plaintiff at 9:47 a.m. on January 22, 2018, telling plaintiff she had abandoned her job. Thus, there is no evidence plaintiff notified defendants of any pregnancy-related disability before her employment was terminated.

The evidence indicates that, at the time plaintiff's employment was terminated, defendants did not have knowledge that plaintiff had any actual physical disability, and plaintiff had not requested reasonable accommodation for any disability. Plaintiff has not raised a triable issue of fact regarding defendants' knowledge or plaintiff's lack of a request for accommodation. Consequently, summary adjudication of the fourth cause of action was properly granted.

## V. RETALIATION

Plaintiff's fifth cause of action alleges retaliation in violation of section 12940, subdivision (h). That section makes it an unlawful business practice for an employer to "discriminate against any person because the person has opposed any practices forbidden under [FEHA] or because the person has filed a complaint, testified, or assisted in any proceeding under [FEHA]." (§ 12940, subd. (h).) "[I]n order to establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*).)

> "'The retaliatory motive is "proved by showing that plaintiff engaged in protected activities, that his employer was aware of the protected activities, and that the adverse action followed within a relatively short time thereafter." [Citation.] "The causal link may be established by an inference derived from circumstantial evidence, 'such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision.'" [Citation.]'" (*Morgan*, *supra*, 88 Cal.App.4th at p. 69.)

As in discrimination claims, the burden shifting analysis applies. "Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action." (*Yanowitz, supra*, 36 Cal.4th

at p. 1042.) If the employer does so, "the burden shifts back to the employee to prove intentional retaliation." (*Ibid*.)

Plaintiff's retaliation cause of action alleges she engaged in protected activity, including raising complaints of sexual harassment and requesting a leave of absence and accommodation for her disabilities. Defendants allegedly retaliated against her for her sexual harassment complaints by demoting her, and retaliated for her request for accommodation by terminating her employment.

A.    Demotion

    1.    *Causation*

Regarding plaintiff's claim that she was demoted in retaliation for her complaints that Renner sexually harassed her, defendants argued plaintiff could not establish causation because her last complaint was too remote in time from her demotion. Further, they asserted they had legitimate, nonretaliatory reasons for demoting plaintiff from store manager, and she had no evidence to show their reasons were a pretext for unlawful retaliation.

Defendants argued that plaintiff's last complaint about sexual harassment occurred five or six months before her demotion. They argued this was too long a time as a matter of law to give rise to an inference of causation.

Plaintiff presented evidence that, throughout her employment with defendants, Renner would hug her, even if she resisted. Additionally, on one occasion when she worked at the Oakdale store, Renner walked up while plaintiff was bending over arranging a display in the jewelry counter and asked, "where are all the 'girls' at?" When plaintiff stood up, Renner stared at her breasts and stated, "oh, there they are." On another occasion, while plaintiff worked at the Manteca store, she was getting ready to have lunch with Renner and told him she needed to run to the restroom because she was having a wardrobe malfunction; Renner responded, "oh, I can help you out with that."

27.

Defendants relied on three allegedly undisputed facts to show the length of time that elapsed between plaintiff's complaints and her demotion: (1) plaintiff claimed she complained to Reel about a comment Renner made "sometime before her write-up"; (2) plaintiff received a performance correction notice on July 27, 2017; and (3) plaintiff was demoted on December 14, 2017. In support, defendants cited plaintiff's deposition testimony that she told Reel about the wardrobe malfunction comment "sometime before her write-up." Defendants apparently interpreted plaintiff's testimony to mean she complained to Reel about the wardrobe malfunction comment prior to her July 27, 2017, performance correction notice. They asserted the five or six months that elapsed between the July 2017 complaint and her demotion on December 14 was too long as a matter of law to raise an inference of causation.

Plaintiff, however, submitted evidence that her last complaint to Reel occurred in early October 2017, prior to the performance correction notice she received on October 12, 2017. Liberally construing the evidence in support of plaintiff's opposition to the motion, and resolving all doubts in her favor (*Yanowitz*, *supra*, 36 Cal.4th at p. 1037), we conclude defendants failed to demonstrate that plaintiff's last complaint occurred in, or prior to, July 2017, and therefore failed to demonstrate as a matter of law that plaintiff cannot establish the element of causation for her retaliation cause of action.

### 2. *Pretext*

Defendants also put forth evidence of legitimate, nonretaliatory reasons for their decision to demote plaintiff from store manager to senior retail clerk. While plaintiff was manager of the Manteca store, the store was not profitable. The store was cluttered and dirty, plaintiff failed to lead her team or build comradery among them, plaintiff's accounting practices were poor, and Renner and Reel felt plaintiff was less present in the store. Plaintiff was given performance correction notices, but failed to improve her performance. After the store plaintiff managed underperformed for a year, Renner,

28.

McLeod, and Dunn made the decision to demote plaintiff to senior retail clerk and demoted her.

Plaintiff argued that defendants' claim she was underperforming as manager of the Manteca store was not supported by the facts. She cited to a performance evaluation she was given on July 27, 2017, which gave her a rating of "meets standards." The performance evaluation reflected the evaluator's belief plaintiff was "having a difficult time managing and leading her employees, the administration functions, the store promotions, and herself." She needed to focus on "providing excellent Customer service, consistently rotating new merchandise out to the sales floor and improving the overall moral[e] of the employees." Plaintiff contended she was having a difficult time because of things that were out of her control. Renner would not allow her to issue disciplinary actions to her employees for insubordinate behavior.

The July 27, 2017, evaluation was given to plaintiff the same day she was given a performance correction notice, which elaborated on the concerns about her leadership, management, and employee morale, and added concerns about the lack of cleanliness and organization in the store. On October 12, 2017, plaintiff was given a second performance correction notice, expressing similar concerns, and adding concerns about her cash handling and communications.

Essentially, plaintiff's evidence challenges the correctness of defendants' decision to demote plaintiff. To establish pretext, however, the employee "cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether [retaliatory] animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." (*Hersant*, *supra*, 57 Cal.App.4th at p. 1005.) The evidence plaintiff presented does not indicate McLeod, Renner, or Dunn — the persons who participated in the decision to demote her — harbored any retaliatory animus based on plaintiff's complaints of sexual harassment. Plaintiff's evidence indicates Reel witnessed Renner hug her, and plaintiff complained to Reel about the two other incidents

29.

of alleged sexual harassment. There was no evidence McLeod, Renner, or Dunn was aware of any complaints plaintiff made about Renner's conduct.

Plaintiff also presented as a fact the statement that "[d]uring her employment, Plaintiff had not seen any other store managers get demoted or terminated for poor sales numbers." In *Foroudi*, an age discrimination case, the plaintiff relied on similar evidence: "evidence that he never personally observed an employee over 60 years of age being promoted." (*Foroudi*, *supra*, 57 Cal.App.5th at p. 1010.) The court observed: "[The plaintiff's] limited personal observations have minimal probative value and are far too weak to raise an inference of discrimination, even when considered with his other evidence." (*Ibid*.) Plaintiff presented the evidence of her observation without any evidence that she was in a position to know whether other stores were profitable or whether other store managers were disciplined in any way for "poor sales numbers." In any event, defendants' evidence indicated plaintiff was demoted based on problems other than just "poor sales numbers."

We conclude plaintiff failed to raise a triable issue of material fact regarding whether defendants' asserted legitimate, nonretaliatory reasons for her demotion were a pretext for retaliation for her alleged complaints of sexual harassment.

B.      Termination

Plaintiff asserts her retaliation cause of action also included allegations that her employment was terminated in retaliation for requesting reasonable accommodations for her disability. Defendants presented the same facts and evidence in response to plaintiff's retaliation claim, showing they had a legitimate reason for plaintiff's termination, as they presented in response to the discrimination causes of action. Plaintiff also relied on the same evidence she presented and arguments she made in support of her discrimination causes of action, asserting that defendants' claimed reasons for terminating her employment were a pretext for retaliation. As discussed in section III. above, the evidence indicates plaintiff did not notify defendants that she had a disability

30.

or request accommodation before the decision to terminate her employment was made. An employer can only retaliate against an employee for engaging in protected activities if the employer is aware of those activities. (*Morgan*, *supra*, 88 Cal.App.4th at p. 70.)

The text plaintiff sent to Rauch in the evening of January 20, 2018, said she was sick, but "[n]ot sure if it's the flu or just pregnancy." The e-mail plaintiff sent to Rauch the evening of January 21, 2018, referred to a "threatened miscarriage" and said the doctor had ordered her to stay home and take things easy until her obstetrician appointment on January 24, 2018. Plaintiff implied in her opening brief that this was notice of a disability or need for accommodation and argued "[i]t is reasonable to assume that [Rauch] would have seen Plaintiff's email about the threatened miscarriage soon after" 6:00 a.m., when Rauch was scheduled to begin work on January 22, 2018. The evidence was to the contrary, however. Rauch declared she did not open the e-mail until about noon on January 22, 2018. She forwarded it to Dunn and Renner at 12:10 p.m. that day; Dunn had already e-mailed plaintiff at 9:47 a.m. to inform her she was considered to have abandoned her job.

We conclude plaintiff failed to raise a triable issue of material fact regarding whether defendants' asserted legitimate, nonretaliatory reasons for the termination of her employment were a pretext for retaliation for her alleged request for reasonable accommodations for her disability.

Because plaintiff failed to raise a triable issue of material fact regarding whether defendants demoted her in retaliation for complaints of sexual harassment or terminated her employment in retaliation for requests for accommodation for a disability, the trial court properly granted summary adjudication of the fifth cause of action.

VI.    FAILURE TO PREVENT DISCRIMINATION AND RETALIATION

Plaintiff's sixth cause of action alleges failure to prevent discrimination and retaliation. FEHA makes it an unlawful employment practice for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from

31.

occurring." (§ 12940, subd. (k).) A plaintiff may recover for an employer's failure to prevent discrimination or harassment only when actionable discrimination or harassment has occurred. (*Wilkin v. Community Hospital of Monterey Peninsula* (2021) 71 Cal.App.5th 806, 830; *Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 288-289.) The trial court adjudicated plaintiff's discrimination and retaliation causes of action in favor of defendants; because it concluded actionable discrimination or retaliation could not be established, it also granted summary adjudication of the sixth cause of action. We have determined defendants were not entitled to summary adjudication of the discrimination causes of action. Accordingly, summary adjudication of the sixth cause of action was improper.

## VII.   WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

Plaintiff's seventh cause of action is for wrongful termination in violation of public policy. Such a cause of action must be based on a policy that is reflected in constitutional or statutory provisions; is public, in the sense that it inures to the benefit of the public, rather than serving only the interests of the individual; and must have been articulated at the time of the termination of employment. (*Franklin v. The Monadnock Co.* (2007) 151 Cal.App.4th 252, 258.) "The FEHA's provisions may provide the policy basis for a claim for wrongful termination in violation of public policy." (*Zamora*, *supra*, 71 Cal.App.5th at p. 31.) Plaintiff's seventh cause of action is predicated upon the same violations of FEHA as are alleged in the earlier causes of action

Under California law, if an employer did not violate FEHA, the employee's claim for wrongful termination in violation of public policy, based on the policy expressed in FEHA, necessarily fails. (*Featherstone*, *supra*, 10 Cal.App.5th at p. 1170.) The trial court determined the seventh cause of action failed for lack of a valid underlying claim of discrimination or retaliation under FEHA. Because we have found defendants did not establish they were entitled to summary adjudication of plaintiff's FEHA discrimination

32.

claims, we conclude they also were not entitled to summary adjudication of the seventh cause of action.

## VIII. HOSPICE'S MOTION FOR SUMMARY JUDGMENT

Defendant Hospice filed its own motion for summary judgment, which sought to establish that it could not be held liable to plaintiff on the claims alleged because it was not her employer. Because it granted summary judgment in favor of both defendants on the basis of CHIMI's motion, in which Hospice joined, the trial court did not rule on Hospice's separate motion.

Our review is de novo; we "may affirm a summary judgment on any correct legal theory, as long as the parties had an adequate opportunity to address the theory in the trial court." (*California School of Culinary Arts v. Lujan* (2003) 112 Cal.App.4th 16, 22.) In light of our conclusion that we must reverse the summary adjudication of the first, second, sixth, and seventh causes of action, which was based on CHIMI's motion, we must now consider whether Hospice nonetheless is entitled to summary adjudication of those causes of action based upon its own motion. That motion was filed in the trial court and opposed by plaintiff; the parties had an adequate opportunity to address the arguments made. This issue was addressed by the parties in their appellate briefing.

In its motion for summary judgment, Hospice asserted it was not plaintiff's employer and therefore was not a proper party to the action. Generally, the proscriptions of unlawful employment practices set out in FEHA apply to employers, although some more broadly apply to persons or entities such as labor organizations, employment agencies, or apprenticeship programs. (§ 12940, subd. (a), (h), (k), (m), (n).) Plaintiff predicated her claims against Hospice on its alleged role as her employer. Additionally, "[a]n action for wrongful termination in violation of public policy 'can only be asserted against an employer.'" (*Kim v. Konad USA Distribution, Inc.* (2014) 226 Cal.App.4th 1336, 1351.) "[T]here can be no [wrongful termination in violation of public policy] cause of action without the prior existence of an employment relationship between the

parties.'" (*Ibid*.) Consequently, all of plaintiff's causes of action require a showing that Hospice was plaintiff's employer.

In support of its motion for summary judgment, Hospice offered the following facts. CHIMI is a nonprofit organization that owns and operates thrift stores. Plaintiff "became employed" by CHIMI as a volunteer in the Welfare to Work Program. Her supervisor, Reel, was employed by CHIMI. In December 2013, plaintiff began to work for CHIMI as a retail clerk; in 2014, she became assistant store manager for the Oakdale store, where she was still employed by CHIMI and supervised by Reel. In September 2016, plaintiff became store manager for the Manteca store, where she was supervised by Renner, the Director of Retail for CHIMI. On December 14, 2017, plaintiff was demoted to senior retail clerk at the Oakdale store, where she was again supervised by Reel. Plaintiff was terminated by CHIMI in January 2018, and informed of her termination by Dunn, a CHIMI employee. CHIMI supervised and controlled plaintiff's work; Hospice did not employ plaintiff; and CHIMI paid plaintiff's salary. These final three statements were supported only by McLeod's bald statements to that effect, and Reel and Renner's statements that they supervised plaintiff.

In its motion, Hospice argued, based on *Talley v. County of Fresno* (2020) 51 Cal.App.5th 1060 (*Talley*), that remuneration is essential in order to find an employment relationship; it contended it did not pay plaintiff, therefore it could not be her employer. Hospice misconstrues the holding of *Talley*.

In *Talley*, a county jail inmate participated in an adult offender work program, during which he fell and was injured. (*Talley*, *supra*, 51 Cal.App.5th at pp. 1063-1064.) He sued the county, alleging he was disabled, he was employed by the county, the county failed to reasonably accommodate his disability or to engage in the interactive process to determine reasonable accommodations, and as a result he was injured. (*Id*. at p. 1064.) The county moved for summary judgment, arguing the plaintiff was not its employee and had no employment relationship with the county as was required for liability under

34.

FEHA. (*Id*. at p. 1066.) It based this argument on the fact the plaintiff received no direct or indirect financial remuneration from the county for the work he performed while in the program. (*Ibid*.)

*Talley* noted that FEHA does not define "employee," other than to identify certain individuals who are excluded. (*Talley*, *supra*, 51 Cal.App.5th at p. 1071.) It discussed *Vernon v. State of California* (2004) 116 Cal.App.4th 114, where a city firefighter alleged he was an employee of the state, even though there was no direct employment relationship between them. (*Talley*, *supra*, at p. 1072.) *Vernon* "concluded the 'common and prevailing principle espoused in all of the tests directs us to consider the "totality of circumstances" that reflect upon the nature of the work relationship of the parties, with emphasis upon the extent to which the defendant controls the plaintiff's performance of employment duties.'" (*Talley*, *supra*, at p. 1072.) *Talley* also discussed *Bradley v. Department of Corrections and Rehabilitation* (2008) 158 Cal.App.4th 1612, which "considered whether a temporary social worker, paid under a contract the Department of Corrections and Rehabilitation (CDCR) had with the National Medical Registry, was an employee of the CDCR for purposes of the FEHA." (*Talley*, *supra*, at p. 1073.) *Bradley* also applied a totality of the circumstances test to determine whether the plaintiff was an employee of the CDCR. (*Talley*, *supra*, at p. 1073.) As *Talley* noted, both *Vernon* and *Bradley* considered "whether *compensated* workers had an employment relationship with their purported employers." (*Id*. at p. 1074.)

In *Talley*, however, the plaintiff was not compensated for his work in the adult offender work program. (*Talley*, *supra*, 51 Cal.App.4th at pp. 1083-1089.) In prior federal and state cases involving uncompensated plaintiffs, courts had adopted a threshold-remuneration test providing that, when the purported employee did not receive any direct or indirect financial remuneration for the work performed, there was no plausible employment relationship between the parties. (*Id*. at pp. 1075-1078.) "In other

35.

words, while remuneration by itself does not *prove* one is an 'employee,' the lack of remuneration definitively precludes one from being an 'employee.'" (*Id.* at p. 1075.)

*Talley* rejected application of the multi-factor totality of the circumstances test to the plaintiff's unpaid work. It explained:

> "In cases where there is no dispute that work was performed for a wage or salary, the threshold remuneration test is satisfied, and the question is whether that 'hired' party is an employee as evaluated by the nonexhaustive factors identified by [*Community for Creative Non-Violence v. Reid* (1989) 490 U.S. 730, 751-752 (*Reid*)]. In cases where the association or work performed does not involve a salary or wage, the threshold-remuneration test is then expressly considered and applied." (*Talley*, *supra*. 51 Cal.App.5th at p. 1080.)

Hospice's motion did not establish that plaintiff was an unpaid volunteer. It concedes she was employed and was paid a salary, but identifies CHIMI as the employer who paid her salary. Consequently, this is not a case where the threshold remuneration test is dispositive. Rather, that threshold test has been satisfied, and the question is whether plaintiff is an employee of Hospice under the totality of the circumstances test. *Reid* identified a number of factors to be considered:

> "In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party. [Citation.] No one of these factors is determinative." (*Reid*, *supra*, 490 U.S. at pp. 751-752, fns. omitted.)

Hospice bore the burden of establishing undisputed facts showing it was not plaintiff's employer under this test. The evidence it presented failed to address these

factors. It largely consisted of conclusory statements of McLeod, the president and chief executive officer of both Hospice and CHIMI, that CHIMI supervised and controlled plaintiff's work, that Hospice did not employ plaintiff, and that CHIMI paid plaintiff's salary. We conclude Hospice failed to carry its burden of demonstrating that it was not plaintiff's employer.

## DISPOSITION

We reverse the judgment and the order granting summary judgment, with instructions to the trial court to enter a new order denying Hospice's separate motion for summary judgment, granting defendants' joint motion for summary adjudication of plaintiff's third, fourth, and fifth causes of action, and denying defendants' joint motion for summary adjudication of the remaining causes of action. Plaintiff is entitled to her costs on appeal.

FRANSON, Acting P. J.

WE CONCUR:


PEÑA, J.


SMITH, J.

37.